UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| I.P.V., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:26-cv-00203-SEB-KMB |
| | ) | |
| SCOTT MAPLES in his official capacity as | ) | |
| Sherriff and Warden of Clark County Jail, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER GRANTING PETITION FOR A WRIT OF HABEAS CORPUS**

IPV's petition for a writ of habeas corpus challenges the lawfulness of her detention by federal immigration authorities. Because the government did not honor its own standards for revoking her supervised release, the petition is granted, and the respondents must release IPV from detention.

**I. Facts**

IPV is a Mexican citizen and national. Dkt. 11-1 at 2. She entered the United States without inspection in 2001 and was promptly apprehended and removed. Dkt. 11-1 at 4, 8. She re-entered the United States, again without inspection, in December 2001. *Id.* at 2. Immigration officials encountered her in 2013. *Id.*

Rather than immediately remove her or keep her in detention pending removal, the government released IPV on an order of supervision (OSUP). *Id.* at 4. There is no evidence or allegation that IPV ever violated a condition of supervision.

On July 28, 2026, IPV reported for a supervision appointment. *Id.* at 2. Immigration officials took her into custody. *Id.* That day, immigration officials completed paperwork purporting to reinstate her previous removal order and authorize her arrest and removal. *Id.* at 8–11.

About four hours after her arrest—U.S. Immigration and Customs Enforcement (ICE) Assistant Field Office Director (AFOD) J. Urbanski executed a form purporting to revoke IPV's OSUP. *Id.* at 5–6. AFOD Urbanski checked boxes to indicate that IPV's OSUP was revoked because it was "appropriate to enforce the removal order entered against" her, ICE had "the ability and means to effectuate" her removal, and ICE "obtained a travel document and scheduled" her removal. *Id.* at 5.

IPV filed her petition while en route from a detention facility in this District to a removal staging facility in Louisiana, where she remains in detention.

## II. Analysis

A federal court may issue a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). IPV challenges the legality of her detention on at least four legal theories. The respondents rightly frame the case as hinging on whether the government properly revoked IPV's OSUP. Because the record shows beyond dispute that it did not, she is entitled to immediate release.

The doctrine of *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), teaches "that federal agencies are required to follow their own regulations and some other formally adopted procedures, including those that govern exercises of an agency's discretion." *Zelaya Diaz v. Rosen*, 986 F.3d 687, 690 (7th Cir. 2021). "[I]t is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required." *Morton v. Ruiz*, 415 U.S. 199, 235 (1974). The core of *Accardi* is that the government

may not "fail[] to exercise its own discretion" when valid regulations require it to do so. 347 U.S. at 268.

AFOD Urbanski purported to revoke IPV's OSUP pursuant to 8 C.F.R. § 241.4(*l*). Dkt. 11-1 at 5. Section 241.4(*l*)(2) prescribes procedures for revoking an OSUP and for returning a removable noncitizen to custody where, as here, there is no allegation of any violation of the OSUP. The regulation grants the Executive Associate Commissioner (EAC) discretion to revoke release when, in the EAC's opinion:

(i)     The purposes of release have been served;

(ii)    The alien violates any condition of release;

(iii)   It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or

(iv)    The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 841.4(*l*)(2).

The regulation grants the same discretionary revocation authority to a "district director." *Id.* A separate regulation tells who may exercise the authority of a district director. *See* 8 C.F.R. § 1.2. Ultimately, that definition does not affect the outcome of this case.

Although a district director holds the same discretionary revocation authority as the Executive Associate Commissioner, a district director may exercise that authority under more limited circumstances. Specifically: "A district director may also revoke release of an alien when, in the district director's opinion, *revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner*." 8 C.F.R. § 241.4(*l*)(2) (emphasis added).

The respondents argue that IPV's OSUP was properly revoked—and therefore her detention is lawful—because (1) AFOD Urbanski has the revocation of a district director pursuant

3

to § 241.4(*l*)(2) and a separate agency delegation;[1] and (2) the revocation document demonstrates for purposes of § 241.4(*l*)(2)(iii) that AFOD Urbanski is of the opinion that it is appropriate to enforce IPV's previous removal order.

IPV argues that the government's delegation of revocation authority does not extend to AFOD Urbanski and that, in any event, AFOD Urbanski's revocation is not valid because it was not issued until hours after IPV was taken into custody. Dkt. 13 at 4–6. The Court need not resolve either dispute. Even if AFOD Urbanski is a district director authorized by § 241.4(*l*)(2) to revoke an OSUP, that authority applies only where "in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." No evidence documents any determination—as a matter of AFOD Urbanski's opinion or otherwise—that revoking IPV's OSUP was in the public interest or that circumstances prevented referral of the case to the EAC. The respondents offer no argument that AFOD Urbanski made those determinations or that the record supports them.

"If men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them." *Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021); *see also Dep't of Homeland Sec. v. Regents of Univ. of California*, 591 U.S. 1, 24 (2020) ("Justice Holmes famously wrote that '[m]en must turn square corners when they deal with the Government.' . . . But it is also true, particularly when so much is at stake, that 'the Government should turn square corners in dealing with the people.'") (citations omitted). The government did not complete every step of the revocation process and therefore may not detain IPV contrary to her OSUP.

---

[1] *See* dkt. 11-2.

### III. Conclusion

IPV's petition for a writ of habeas corpus is **granted**. The respondents will have **48 hours** to file documentation that they have released her according to her most recent order and conditions of supervision. The **clerk is directed** to enter **final judgment**.

**IT IS SO ORDERED.**

Date:  8/11/2026

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Paul Umbaugh, IV
DOJ-USAO
paul.umbaugh@usdoj.gov

Karen Weinstock
Weinstock Immigration Lawyers
kweinstock@visa-pros.com